UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ALDRIC GRANDY,

                       Plaintiff,                            **MEMORANDUM AND ORDER**

    -against-

                                                                           10-CV-4278 (SLT) (MDG)

BAC HOME LOAN SERVICING, LP,

                       Defendant.
-------------------------------------------------------------------x

**TOWNES, United States District Judge:**

      Plaintiff Aldric Grandy, proceeding *pro se*, brings this action against BAC Home Loan Servicing, LP, seeking, *inter alia*, to enjoin the foreclosure and sale of his residence, to rescind a loan agreement, and to obtain compensatory damages of over $1 million and punitive damages of over $4 million. Defendant, whose true name is BAC Home Loans Servicing, LP, now moves to dismiss this action pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, alleging – among other things, that plaintiff's complaint does not meet the requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court grants defendant's motion to dismiss, but grants the *pro se* plaintiff leave to amend his complaint.

*BACKGROUND*

      On September 20, 2010, plaintiff commenced this action by filing a 25-page "Original Petition" (the "Complaint") and a 27-page "Petition for Temporary Injunction."[1] The Complaint

---

[1] The 19th and 24th pages of the Complaint were errantly omitted when the pleading was scanned into the Court Electronic Case Filing system ("ECF"). *See* Docket Sheet, Document 1. When citing to pages in the Complaint, this Court is referring to the pages that appear in the pleading filed by plaintiff, which included all 25 pages. This Court directs that the Clerk of Court re-scan the Complaint into ECF.

appears to be based on a form complaint, since it is virtually identical to a complaint filed in July 2010 in *Craig v. Bank of New York Mellon Corp.*, E.D.N.Y. Docket No. 10-CV-4438 (SLT), and to complaints filed in other cases. However, with the following two exceptions, the form complaint has not been altered to allege facts specific to plaintiff's case.

First, the Complaint specifically alleges that plaintiff "entered into a consumer contract for the refinance of a primary residence located at 194-02 112th Avenue, Saint Albans, New York . . ." (Complaint at 1), although it does not allege when plaintiff entered into that contract or with whom he contracted. Second, the Complaint lists "the fees charged at settlement" and alleges that plaintiff "is unable to determine whether or not the . . . fees are valid in accordance with the restriction provided by the various consumer protection laws" (*id*. at 11-12). Plaintiff requests certain information relating to the fees, then states:

> The above charges are hereby disputed and deemed unreasonable until such time as said charges have been demonstrated to be reasonable, necessary, and in accordance with the limitations and restrictions included in any and all laws, rules, and regulations intended to protect the consumer.
>
> In the event lender fails to properly document the above charges, borrower will consider same as false charges. The effect of the above amounts that borrower would pay over the life of the note will be an overpayment of $470,332.09.

(*Id*. at 12).

All of the remaining allegations in the Complaint appear to have been copied directly from the form complaint, without any effort to relate them to the facts of plaintiff's case. The Complaint begins with a general description of mortgage industry practices alleged to be a "carefully crafted criminal connivance" (*id*. at 2). After noting that "[i]t is not the intent of

2

[plaintiff] to indict the entire industry" (*id*.), the Complaint describes a hypothetical scheme that begins with an unspecified "Lender" securing a "large loan from a large bank" (*id*. at 3).

Although plaintiff specifically alleges the existence of a "consumer contract" (*id*. at 1), pages 6 through 8 of the Complaint list various defenses to unspecified contractual claims. For example, the Complaint – which repeatedly refers to "Defendants" notwithstanding the fact that there is only one defendant named in the caption and frequently refers to plaintiff as "Petitioner" despite the fact that he is identified as "Plaintiff" in the caption – states that "Defendants . . . have failed to produce said contract" and "claim agency to represent the principal in a contractual agreement involving Petitioner" despite a lack of "any evidence of said agency other than a pronouncement that agency has been assigned by some person, the true identity and capacity of whom has not been established" (*id*. at 8). Since there is nothing in the Complaint to suggest that defendant has advanced claims based on the "consumer contract," it is unclear whether these allegations are even relevant to this action.

Pages 9 through 14 of the Complaint allege, among other things, that "Defendants, by and through Defendant's Agents, conspired with other Defendants, et al, toward a criminal conspiracy to defraud Petitioner" (*id*. at 9). The Complaint does not identify the "Defendants" or "Agents" or allege any specific actions in furtherance of the conspiracy, other than alleging that some unspecified "Agent practiced up-selling to Petitioner" (*id*.) and that some unspecified "Lender . . . conspired with [an] appraiser . . . for the purpose of inducing Petitioner to enter into [the loan]" (*id*. at 13) and then packaged the debt and lien arising from the loan in ways that arguably defrauded investors and the Internal Revenue Service (*id*. at 11). It is unclear how

3

defendant was involved in any of these actions or how the alleged conspirators defrauded plaintiff.

Similarly, pages 15 through 18 allege that "Lenders" and "Defendants" disregarded sound underwriting practices, issuing low- or no-documentation loans and engaging in the practice of "risk layering." However, the Complaint does not allege that plaintiff was issued a low- or no-documentation loan, or that these underwriting practices damaged plaintiff. In addition, pages 15 through 17 do not allege specific acts on the part of defendant, alleging only:

> Petitioner is informed and believe [*sic*], and on that basis allege [*sic*], that Defendants, and each of them, engaged and/or actively participated in, authorized, ratified, or had knowledge of, all of the business practices described above in paragraphs 30-42 of this Complaint (*id*. at 18).[2]

The Complaint contains a section entitled "Causes of Action," which appears to list six separate claims. Only one of these – entitled, "Cause of Action [for] Violation of Truth in Lending Act" – purports to raise a federal question. The remaining five cause of actions – entitled "Breach of Fiduciary Duty," "Cause of Action – Negligence/ Negligence Per Se," "Agent: Common Law Fraud," "Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing," and "Intentional Infliction of Emotional Distress" – purport to allege state-law or common-law claims.

The first two of these five causes of action, however, principally allege violations of three federal statutes: the Truth in Lending Act, 15 U.S.C. §1601, *et seq*. ("TILA"); the Real Estate Settlement Procedures Act, 12 U.S.C. §2614, *et seq*. ("RESPA"); and the Home Ownership and

---

[2]The paragraphs of the Complaint are not numbered, but this Court notes that all of the Complaint's allegations concerning underwriting standards are contained in the 12 paragraphs immediately preceding this allegation.

4

Equity Protection Act, 15 U.S.C. §1639 ("HOEPA"). The cause of action for "Breach of Fiduciary Duty," which purports to be brought against "Defendants Agent, appraiser, trustee, Lender, et al, and each of them" (Complaint at 19), states that the duties breached "included, but were not limited to, ensuring their own and Petitioners' [*sic*] compliance with all applicable laws governing the loan transaction in which they were involved, including but not limited to, TILA, HOEPA, RESPA and the Regulations X and Z promulgated there under" (Complaint at 20 (emphasis omitted)). Similarly, the cause of action for "Negligence" alleges that "Defendants owed a duty of care under TILA, HOEPA, RESPA and the Regulations X and Z promulgated there under to, among other things, provide proper disclosures concerning the terms and conditions of the loans they marketed, to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain, and to avoid paying undue compensation such as 'yield spread premiums' to mortgage Agents or loan officers." (*Id*. (emphasis omitted)).

*The Petition for Temporary Injunction*

The Petition for Temporary Injunction (the "Petition"), filed together with the Complaint, also does not contain any specific factual allegations. Indeed, the first 23½ pages of the Petition are identical to the first 23 pages of the Complaint, except for the caption; the paragraph listing the parties (which, in the Petition, omits defendant's address); and the spacing used in listing the fees charged at settlement (which is single-spaced in the Complaint and double-spaced in the Petition). The remainder of the Petition, while different from the Complaint, contains largely conclusory allegations, some of which appear to contradict allegations in the Complaint. For example, some portions of the Complaint, such as the section describing what plaintiff intends to prove, imply that the lender has yet to commence foreclosure proceedings. The Complaint states

5

that the "Lender has no legal standing to bring collection or foreclosure claims" and that "even if Lender were to prove up a contract to which Lender had standing," the Lender would nonetheless have no claim against the property (Complaint at 6). The Petition, in contrast, not only seeks to enjoin defendant "from foreclosing on the property" (Petition at 24), but specifically states that "defendant has already foreclosed" (*Id*. at 25). However, the Petition offers no specifics regarding the foreclosure action.

In a Memorandum and Order dated September 27, 2010, this Court denied the preliminary injunctive relief sought in the Petition. This Court noted, among other things:

> [P]laintiff has not provided enough facts to enable this Court to determine whether the sale of his property is imminent. Plaintiff does not unequivocally state that foreclosure proceedings have been brought against him in State Court, much less state when the judgment of foreclosure was entered. In addition, plaintiff does not allege when the sale of his property is scheduled to take place, and makes no mention of receiving an eviction notice from the Sheriff. Accordingly, this Court cannot find from plaintiff's submissions that plaintiff faces imminent, irreparable harm.

*Grandy v. BAC Home Loan Servicing, LP*, No. 10-CV-4278 (SLT)(MDG), slip op. at 4 (E.D.N.Y. Sept. 27, 2010).

*Defendant's Motion*

Defendant now moves to dismiss this action pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Although Defendant's Memorandum of Law in Support of its Motion ("Defendant's Memo") raises eight points, four of which contain sub-points, defendant's arguments can be grouped into three categories. First, defendant argues that the allegations in the Complaint fail to state a claim. In this connection, defendant argues that

the Complaint as a whole fails to satisfy the notice pleading requirements set forth in Rule 8 of Federal Rules of Civil Procedure (Defendant's Memo at 12-13); that the allegation of fraud fails to satisfy the heightened pleading standard of Rule 9(b) (Defendant's Memo at 19-21), and that there is no factual support for the various causes of action.

Second, defendant argues that some of plaintiff's claims – including the causes of action under TILA, HOEPA and RESPA; the state-law negligence claims; and plaintiff's claim intentional infliction of emotional distress – are time-barred. In making these arguments, defendant asserts that the "loan documents at issue were executed on July 18, 2006 . . . , and this action was filed . . . more than four years later" (*see*, *e.g*., Defendant's Memo at 13). However, since the Complaint does not allege the date on which the loan documents were executed or any other information from which this fact could be deduced, these statute of limitations arguments rely on documentary evidence supplied by defendant. Specifically, defendant has filed a declaration from one of its attorneys, Glenn B. Coleman, attaching a note and mortgage which Mr. Coleman alleges, upon information and belief, relate to the loan which is the subject of plaintiff's action (Declaration of Glenn B. Coleman ["Coleman Declaration"], Exs. B and C, respectively).

Third, defendant argues that a prior state-court foreclosure action operates to preclude this action. Plaintiff argues that the Complaint "seeks to reverse [a] Foreclosure Judgment" entered by a state court on May 27, 2008, and that "such relief is precluded by the res judicata, collateral estoppel and Rooker-Feldman doctrines" (Defendant's Memo at 7). Again, since the Complaint contains no allegations concerning this state-court action, these arguments are based on facts set forth in, and documents attached to, the Coleman Declaration.

## DISCUSSION

*Standard of Review*

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all of the factual allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006). Moreover, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). A court must then determine whether a plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted), a court deciding such a motion "is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). However, in some circumstances, a court may consider documents other than the complaint. For example,

8

"[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.* (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998)).  In addition, a document which is not attached to, or incorporated by reference in, the complaint may be considered if the complaint "solely relies" on the document and it is "integral to the complaint." *Id.* (quoting *Cortec Indus.*, 949 F.2d at 47) (emphasis omitted).  If "matters outside the pleading are presented to and not excluded by the court," a court should convert the motion to one for summary judgment and give "all parties . . . [a] reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

*Rules 8(a)*

Defendant's first group of arguments principally relies on the pleading standards sets forth in Rules 8(a) and 9(b) of the Federal Rule of Civil Procedure.  Rule 8(a) provides:

> A pleading that states a claim for relief must contain:  (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Under this Rule, the complaint "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93.

While Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, —, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

9

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555. As the Second Circuit has stated, *Twombly* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis added). If a party does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 569.

When a complaint fails to comply with the requirements of Rule 8(a), a district court has the power to dismiss the complaint or to strike such parts as are redundant or immaterial. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1998). However, even "if the court dismisses the complaint for failure to comply with Rule 8, it should generally give the plaintiff leave to amend." *Simmons*, 49 F.3d at 86-87.

The Complaint in this case fails to satisfy the notice pleading requirements of Rule 8(a). The Complaint offers labels, conclusions and naked assertions, but virtually no facts relating specifically to plaintiff or defendant. Although the Complaint alleges that plaintiff entered into some sort of "consumer contract for the refinance of [his] primary residence" (Complaint at 1), it provides no other information regarding the contract. The Complaint does not allege when the contract was made or even that defendant was a party to the contract. In addition, the Complaint

vaguely alleges conspiracies between unspecified "Defendants," "Lenders" and "Agents," without providing any specific facts relating to plaintiff's case or any hint as to defendant's role.

The Complaint lists specific fees that were presumably charged to plaintiff during the closing. However, the Complaint does not specifically allege that defendant was involved in the real estate closing or charged these fees. Moreover, the Complaint does not allege that these fees were improper, but only that he is "unable to determine whether or not the above fees are valid in accordance with the restrictions provided by the various consumer protection laws" (Complaint at 12). These allegations do not suggest a viable cause of action against defendant.

The other allegations in the Complaint are so confused, ambiguous, vague, or otherwise unintelligible as to disguise its true substance. It is impossible to determine which parts of the Complaint are redundant or immaterial or, more correctly, which parts are not. Accordingly, the Complaint is dismissed. *See Salahuddin*, 861 F.2d at 42. This Court will, however, grant plaintiff leave to amend the pleading. *See Simmons*, 49 F.3d at 86-87.

Plaintiff is warned that, in amending his Complaint, he should not copy indiscriminately from a form complaint. For example, portions of the form plaintiff used in drafting the Complaint raise defenses to a foreclosure action that is not before this Court. The Complaint alleges, among other things, that "Defendants" lack standing because they do not have evidence of plaintiff's contractual obligation and cannot "claim agency to represent the principal in a contractual agreement involving Petitioner" (*id*. at 8). The Complaint also speculates that plaintiff's promissory note may have been "converted to a security and sold into a special purpose vehicle," making the trustee of that special purpose vehicle – not defendant – the real party in interest (*id*. at 9). These allegations should not be included in the amended complaint.

In addition, the amended complaint should not simply catalogue abusive mortgage industry practices without specifically alleging that defendant perpetrated those abuses, that

these abuses affected plaintiff, and that these abuses gave rise to a valid claim for relief. The Complaint alleges, among other things, that an "Agent practiced up-selling to Petitioner" (Complaint at 9); that a "Lender . . . conspired with [an] appraiser" to inflate the value of financed properties (*id*. at 13); that "Defendants" issued low- and no-documentation loans and otherwise "relaxed, and often disregarded, traditional underwriting standards" (*id*. at 15-16); that the "Lender" conspired with "the trust Agent at closing" for the purpose of inducing "Petitioner to sign documents without allowing time for Petitioner to read and fully understand what was being signed" (*id*. at 13); and that "Lender" then profited by creating derivatives that succeeded when loans defaulted (*id*. at 10). Since the Complaint does not state that defendant – a loan servicing company – was involved in making the loan at issue, it is unclear whether these allegations even relate to defendant.

The Complaint also fails to specify that plaintiff was the victim of some of these abuses. For example, plaintiff does not allege that an appraiser overestimated the value of his property or that he was not required to provide documentation. Similarly, while the Complaint specifically alleges that the "Lender" defrauded persons who invested in the mortgage-backed derivatives, it does not allege that plaintiff was an investor. Allegations that do not relate to plaintiff's case should not be included in the amended complaint.

*Rule 9(b)*

In case plaintiff elects to amend the Complaint to allege common-law fraud, this Court will briefly address defendant's Rule 9(b) argument. In contrast to the very liberal pleading requirements of Rule 8(a), Rule 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

12

It is well established that "in order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "Rule 9(b) applies to all common law fraud claims, including claims under state law." *Icebox–Scoops v. Finanz St. Honore, B. V.*, 676 F. Supp. 2d 100, 110 (E.D.N.Y.2009) (citing *Meisel v. Grunberg*, 651 F.Supp.2d 98, 107-08 (S.D.N.Y. 2009)).

In arguing that plaintiff has failed to satisfy the requirements of Rule 9(b), defendant refers solely to that portion of the Complaint which purports to advance a common-law fraud claim against an unspecified "Agent" (Complaint at 21). This portion of the Complaint alleges that the "Agent," acting "in concert and collusion with others named herein," made misrepresentations without a "reasonable ground for believing them to be true" for the purpose of inducing plaintiff to enter into the loan agreement (*id.*). These allegations, however, do not specify the misrepresentations, identify who made the misrepresentations, state where and when the misrepresentations were made, or explain why the misrepresentations were fraudulent. Accordingly, these allegations do not meet the requirements of Rule 9(b). *See Lerner*, 459 F.3d at 290.

Rule 9(b) applies to fraudulent misrepresentation claims and "requires that the plaintiff '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337,

13

347 (2d Cir. 1996)). Even if the alleged fraud consisted of omissions, making plaintiff "unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *Cohain v. Klimley*, Nos. 08 Civ. 5047(PGG), 09 Civ. 4527(PGG), 09 Civ. 10584(PGG), 2010 WL 3701362, at *20 (S.D.N.Y. Sept. 20, 2010) (quoting *Odyssey Re Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F.Supp.2d 282, 293 (S.D.N.Y.2000)).

*Defendant's Remaining Arguments*

This Court declines to address defendant's remaining arguments at this time. All of defendant's statute of limitations arguments rely on facts not alleged, and documents not specifically referred to, in the Complaint. For example, defendant's counsel asserts, on information and belief, that a note and mortgage attached to his declaration relate to the loan which is the subject of plaintiff's action (*see* Coleman Declaration, ¶¶3-4, Exs. B and C). Defendant's counsel's assumption may ultimately prove correct, but these documents are not described in the Complaint with the specificity required to permit that conclusion at this juncture. Similarly, because this Complaint is so unclear, it is not possible to assess defendant's *res judicata*, collateral estoppel and *Rooker-Feldman* arguments at this juncture. Since this Court has already determined that plaintiff should be permitted to amend his complaint, it is more efficient to await the amended complaint and to permit defendant to renew whatever remaining arguments may still be relevant.

## *CONCLUSION*

For the reasons set forth above, plaintiff's Complaint is dismissed with leave to amend within thirty (30) days of the date of this Memorandum and Order. If plaintiff fails to file his amended complaint within the time allowed, this Court may enter a judgment dismissing this

action without further notice to the parties.  If plaintiff timely files an amended complaint, defendant may seek permission to file a motion to dismiss that pleading, raising any ground not decided herein or any new grounds that may be appropriate.

**SO ORDERED**.

/s/
SANDRA L. TOWNES
United States District Judge

Dated: March 30, 2012
       Brooklyn, New York